# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SHRIKANT U. JANOLKAR,  )  | |
|  ) | |
|   Plaintiff,   ) | |
|  ) CIVIL ACTION | |
| vs.  ) FILE NO. | |
|  ) | |
| URBAN TRUST BANK, FSB,  ) | |
|  ) | |
|   Defendant.   ) | |

## COMPLAINT TO SET ASIDE WRONGFUL FORECLOSURE AND FOR DAMAGES

Plaintiff, by and through his attorney, hereby alleges, claims and complains against the Defendant as follows:

## PARTIES

1.

Plaintiff Shrikant U. Janolkar ("Plaintiff") is the former owner of record of the residential real property as identified herein infra.

2.

Defendant Urban Trust Bank, FSB ("UBT") is and was at all times material hereto a federal savings bank headquartered in Lake Mary, Florida. UBT unlawfully conducted a foreclosure sale of Plaintiff's Property on or about April 2, 2013, and Plaintiff has been unjustly deprived of his title to said Property in view, and as a consequence, of same.

3.

The residential real property that is the subject of this action (the "Property") is located at 941 Centergate Drive, Ellijay, Georgia 30540.

## JURISDICTION AND VENUE

4.

Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because the parties to this action are of diverse citizenship and the amount in controversy exceeds $75,000.00. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) and (b)(2) in that the residential property that is the subject of this action is situated in this district and a substantial part of the events giving rise to the Complaint occurred therein.

## FACTUAL ALLEGATIONS

6.

On December 28, 2007, Plaintiff Shrikant U. Janolkar ("Plaintiff") entered into a transaction with Taylor, Bean & Whitaker Mortgage Corporation ("Taylor-Bean"), whereby Taylor-Bean agreed to loan Plaintiff the sum of $341,900.00 in

order to provide financing for the construction of the Property at 941 Centergate Drive in Ellijay, Georgia ("Property").

7.

In return for this loan, Plaintiff executed a Promissory Note ("Note") and security interest in the form of a Security Deed ("Deed") in favor of Taylor-Bean, to which Plaintiff pledged the Property as collateral for the Note.  True and correct copies of said Note and Deed are attached hereto as Exhibits "A" and "B," respectively.

8.

Plaintiff then entered into a fixed-rate loan modification agreement with Taylor-Bean approximately nine (9) months later on October 10, 2008, and on March 2, 2009, ownership and servicing rights to Plaintiff's loan were allegedly transferred to Urban Trust Bank ("UBT").  True and correct copies of said Loan Modification Agreement and the MERS Milestone Report,[1] as provided to Plaintiff by UBT, are attached hereto as Exhibits "C" and "D," respectively.

---

[1] Plaintiff's loan was first registered on the MERS system at the time of the loan modification transaction.  MERS is an electronic registration and tracking system that was formed to track both beneficial ownership interests in, and servicing rights to, mortgage loans as they change hands through the life of a loan.  The MERS Milestone Report is a key report available to loan servicers and other mortgage industry members which reflects the ownership of the Note, as well as the identity of the mortgage servicer during its registration on the MERS system.

9.

UBT did not furnish Plaintiff with notice of the transfer of servicing until May 11, 2009, after which Plaintiff complained to UBT that, among other things, certain payments to Taylor-Bean had apparently not been applied and, therefore, that the amount of the unpaid principal loan and escrow balances as stated by UBT were incorrect.   A true and correct copy of said Notice is attached hereto as Exhibit "E."

10.

UBT replied, however, that it was unable to determine whether certain payments by Plaintiff to Taylor-Bean had been misapplied, and that Plaintiff would not be credited for these payments, to Plaintiff's detriment.

11.

In early 2011, Plaintiff began to fall behind in his mortgage payments, and UBT referred Plaintiff's loan account to its foreclosure counsel, McCurdy & Candler, LLC (McCurdy-Candler), for handling.

12.

Thereafter, on September 8, 2011, UBT published a Notice of Sale Under Power ("Notice") in the Gilmer County Times Courier, declaring the loan in default and commencing foreclosure proceedings against the Property.   An Assignment to UBT, dated September 20, 2011, was filed in the Gilmer County

Superior Court Clerk's Office on September 30, 2011.  A true and correct copy of said Assignment is attached hereto as Exhibit "F."

13.

After publication of the Notice but prior to foreclosure, Plaintiff reinstated the loan by curing the default; however, after a series of unsuccessful attempts to modify the loan or to dispose of the Property by short sale, in or around March 2013, UBT informed the Plaintiff that the Property would be foreclosed on the first Tuesday of April thereafter.

14.

Plaintiff then sent UBT a Qualified Written Request ("QWR") under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, et seq. ("RESPA"), which included a Debt Validation Notice ("DVN") on March 28, 2013.

15.

On April 1, 2013, Plaintiff was advised by UBT that the scheduled April 2013 foreclosure sale had been postponed.  A true and correct copy of the relevant portions of UBT's Consolidated Notes Log, as provided to Plaintiff by UBT, is attached hereto as Exhibit "G."

16.

Three (3) days prior, on March 28, 2013, Plaintiff was also advised of the possibility of another loan modifiation, and that Plaintiff should send in a

completed loan modification packet as soon as the documents were received from UBT.  A true and correct copy of the March 28, 2013 correspondence sent by UBT to Plaintiff is attached hereto as Exhibit "H;" <u>see</u> also Exhibit "G," indicating that Plaintiff was also told this on April 1, 2013.

17.

Later in the day on April 1, 2013, UBT decided against postponing the sale, but Plaintiff was never notified that UBT had made the decision to continue with the sale.  On April 2, 2013, Plaintiff was advised that the Property had been foreclosed at public auction for an undetermined price.  See Exhibit "G."

18.

On information and belief, Plaintiff's Property was grossly underbid at a price of no more than $172,500.  See Exhibit "G."  Plaintiff's Property has an estimated value of at least $228,800.00.  A true and correct copy of the Gilmer County Tax Assessor's Records are attached hereto as Exhibit "I."

## COUNT ONE:
## PROMISSORY ESTOPPEL

19.

Plaintiff hereby re-alleges and incorporates by reference each and every allegation above, as if fully set forth verbatim herein.

20.

The actions set forth above violate the doctrine of promissory estoppel.

21.

Specifically, as set forth above, Plaintiff relied to his detriment on the statements and representations of UBT that Plaintiff would be considered for a loan modification, and that UBT would postpone the foreclosure sale in order to determine whether assistance could be offered to Plaintiff.

22.

In truth, however, UBT never considered Plaintiff for a loan modification or had any intention of postponing the April 2013 foreclosure sale.

23.

Plaintiff has been damaged by UBT as a result of UBT's violation of the doctrine of promissory estoppel.

24.

Plaintiff has been damaged in an amount equal to the value of Plaintiff's Property, plus the value of having Plaintiff's title to his Property wrongfully taken including, but not limited to pre-judgment interest and damage caused by improper reporting of the foreclosure on Plaintiff's credit report.

## COUNT TWO
## MISREPRESENTATION

25.

Plaintiff hereby re-alleges and incorporates by reference each and every allegation above, as if fully set forth verbatim herein.

26.

On April 1, 2013, UBT made material misrepresentations regarding material information regarding the mortgage transaction, including, but not limited to, promising Plaintiff that his loan account would be reviewed by UBT for a potential modification or other workout arrangement, and that the April 2013 foreclosure sale would be postponed when, in fact, UBT had no intent on assisting Plaintiff or postponing the sale.

27.

UBT made the representations with the intent that the Plaintiff would rely on them so that UBT could make a profit from the transaction.

28.

UBT knew that it could make a larger and quicker profit by foreclosing on Plaintiff's Property rather than modifying Plaintiff's loan and engaging in a sale of the Property at fair market value.

29.

UBT intentionally or recklessly misrepresented information regarding loan modification and workout options, upon which the Plaintiff relied, impairing and frustrating his efforts to retain his home.  UBT also falsely represented to Plaintiff that the foreclosure sale was being postponed.

30.

UBT knew these representations were false.

31.

Plaintiff relied to his detriment on UBT's representations, and because of the representations believed UBT was acting in good faith regarding a loan modification or workout.

32.

Plaintiff has been damaged in an amount equal to the value of Plaintiff's Property, plus the value of having Plaintiff's title to his Property wrongfully taken including, but not limited to pre-judgment interest and damage caused by improper reporting of the foreclosure on Plaintiff's credit report.

## COUNT THREE:
## BREACH OF CONTRACT; VIOLATION OF RESPA 12 U.S.C. § 2605(b)

33.

Plaintiff hereby re-alleges and incorporates by reference each and every allegation above, as if fully set forth verbatim herein.

34.

Plaintiff shows that his loan was a "federally related mortgage loan" as that term is defined in the Real Estate Settlement and Procedures Act (`RESPA'), 12 U.S.C. § 2602(1).

35.

Defendant UBT is a "servicer" as defined in 12 U.S.C. § 2605(i)(2), (3).

36.

The notification provision in section 2605(c)(1) expressly states:

> Each transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer.

37.

Section 2605(c)(2)(A) further states that the notice required:

> shall be made to the borrower not more than 15 days after the effective date of transfer of the servicing of the mortgage loan (with respect to which such notice is made).

38.

UBT failed to notify Plaintiff of the transfer of servicing of Plaintiff's loan within 15 days after the effective date of the transfer, which occurred on March 2, 2009.

39.

Rather, UBT did not notify Plaintiff of its right to service the loan until May 11, 2009, which was seventy days later, and Plaintiff continued making monthly mortgage payments to Taylor-Bean, who was in bankruptcy, and who, in turn, silently continued to accept payments from the Plaintiff while simultaneously

failing to properly credit Plaintiff's mortgage account.

40.

Thus, Plaintiff has been damaged, and the above violation committed by UBT subject UBT to actual damages to the Plaintiff as well as any additional damages allowed by the Court.

### COUNT FOUR:
### WRONGFUL FORECLOSURE
### (NEGLIGENCE)

41.

Plaintiff hereby re-alleges and incorporates by reference each and every allegation above, as if fully set forth verbatim herein.

42.

UBT owed a duty to Plaintiff to act in good faith and in accordance with the parties' contract and applicable law in servicing Plaintiff's loan including discussions regarding modification of the loan and the scheduling or postponement of any foreclosure sales.

43.

UBT acted in bad faith, reflected by its arbitrary, reckless and intentional conduct evincing gross indifference or intentional disregard for the Plaintiff's interests by:

(a) Representing to Plaintiff that modification efforts were possible;

(b) Failing to even consider any modification or loss mitigation procedures to enable Plaintiff to retain home ownership after representing to Plaintiff otherwise;

(c) Moving forward with the April 2013 foreclosure sale after confirming to Plaintiff that said sale was being postponed.

44.

Thus, UBT was negligent and careless in the manner in which it performed its duties in that UBT made statements and representations to Plaintiff that Plaintiff would be considered for a loan modification, and that UBT would postpone the April 2013 foreclosure sale, when UBT foreclosed on Plaintiff's Property before even allowing Plaintiff to complete the modification paperwork and when UBT apparently had no intention of postponing the foreclosure sale.

45.

Plaintiff has been damaged in an amount equal to the value of Plaintiff's Property, plus the value of having Plaintiff's title to his Property wrongfully taken including, but not limited to pre-judgment interest and damage caused by improper reporting of the foreclosure on Plaintiff's credit report.

## COUNT FIVE:
## GROSS NEGLIGENCE

46.

Plaintiff hereby re-alleges and incorporates by reference each and every allegation above, as if fully set forth verbatim herein.

47.

By way of UBT's actions described above and further, by failing to make any real effort to correct its mishandling of Plaintiff's mortgage loan account at any time through the date of the filing of this Complaint; by failing to ensure that Plaintiff was not needlessly injured by UBT's mistakes; and by conducting a foreclosure sale of Plaintiff's most valuable asset without justification and in the face of conclusive evidence of its errors, UBT acted with reckless, wanton and heedless disregard for the rights of Plaintiff.

48.

As a result of UBT's gross negligence, Plaintiff has suffered personal and financial damages, including, but not limited to, emotional harm and distress, and CMI is liable to Plaintiff for an amount equal to the value of Plaintiff's Property, plus the value of having Plaintiff's title to his Property wrongfully taken including, but not limited to pre-judgment interest and damage caused by improper reporting of the foreclosure on Plaintiff's credit report.

## JURY DEMAND

49.

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby requests a jury trial on all claims and issues in this case.

## PRAYER FOR RELIEF

50.

WHEREFORE, Plaintiff prays that Defendant be summoned to appear and answer and that, on final trial, judgment be granted against UBT setting aside the April 2, 2013 foreclosure sale and awarding damages to the Plaintiff, including punitive damages, in an amount to be determined at trial. Plaintiff further prays for pre-judgment and post-judgment interest, attorney's fees and costs of suit, including reasonable expert fees, as allowed by law.

This 8th day of May, 2013.

*s/Natalie R. Rowland*
Natalie R. Rowland
Georgia Bar No. 431608
5555 Glenridge Connector
Suite 200
Atlanta, Georgia 303042
(770) 217-7828 (P)
(770) 217-7544 (F)
rowlandecf@yahoo.com
**ATTORNEY FOR PLAINTIFF**

## **CERTIFICATION**

The undersigned hereby certifies that the within and foregoing **COMPLAINT TO SET ASIDE WRONGFUL FORECLOSURE AND FOR DAMAGES** was prepared using Times New Roman 14-point font in accordance with LR 5.1(B).

This 8th day of May, 2013.

                                        *s/Natalie R. Rowland*
                                        Natalie R. Rowland
                                        Georgia Bar No. 431608
                                        5555 Glenridge Connector
                                        Suite 200
                                        Atlanta, Georgia 303042
                                        (770) 217-7828 (P)
                                        (770) 217-7544 (F)
                                        rowlandecf@yahoo.com
                                        **ATTORNEY FOR PLAINTIFF**